# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GEOVERA SPECIALTY INSURANCE COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-7577** |
| **MARIETTE JOACHIN, et al.** | **SECTION: "G"(5)** |

## <u>ORDER AND REASONS</u>

Before the Court is Third-Party Defendant Bowles & Associates, Inc.'s ("Bowles") "Motion for Summary Judgment."[1] In this litigation, Plaintiff GeoVera Specialty Insurance Company ("GeoVera") alleges that Defendants Ebert Joachin and Mariette Joachin (the "Joachins") falsified their insurance application and filed a fraudulent insurance claim.[2] The Joachins filed a Third-Party Complaint against Bowles, their insurance agent, contending that Bowles was negligent in procuring the insurance policy and should indemnify the Joachins in the event that GeoVera refuses to provide coverage.[3] Bowles filed the instant motion, urging the Court to grant summary judgment because Bowles did not have a duty to procure a specific type of insurance policy.[4] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will deny the motion.

---

[1] Rec. Doc. 66.

[2] Rec. Doc. 1.

[3] Rec. Doc. 5.

[4] Rec. Doc. 66.

**I. Background**

*A.*    ***Factual Background***

**1.    GeoVera's Claims**

In the Complaint, GeoVera alleged that the Joachins filed fraudulent claims under a homeowner insurance policy.[5] According to GeoVera, on April 3, 2018, the Joachins purchased a home at 5809 Bienvenue Avenue (the "Property") for $55,000.00.[6] GeoVera then alleged that on April 11, 2018, the Joachins purchased from GeoVera a homeowner's insurance policy (the "Policy") that was effective April 11, 2018 until April 11, 2019.[7] GeoVera asserted that "[t]he dwelling had termite damage, missing sheetrock, and other damage" that the Joachins failed to disclose on their insurance application.[8] GeoVera contended that on May 9, 2018, a fire caused substantial damage to the Property, and on May 10, 2018, the Joachins filed an insurance claim for $170,000.00 under the Policy.[9] On June 6, 2018, the Property was allegedly demolished by an order of the Jefferson Parish regulatory department.[10]

GeoVera averred that after the fire, it began an investigation regarding the claim and requested that the Joachins submit to an Examination Under Oath ("EUO") on July 12, 2018.[11] GeoVera alleged that during the EUO, it learned that numerous repairs were being made to the property at the time of fire, the Joachins had not yet moved into the Property, and the Joachins

---

[5] Rec. Doc. 1.

[6] *Id.* at 2.

[7] *Id.* at 2–3.

[8] *Id.* at 3.

[9] *Id.*

[10] *Id.* at 4.

[11] *Id.* at 3–4.

had connected the electricity at the Property but no other utilities.[12] GeoVera also contended that the fire department investigation determined that the fire was accidental, but the results of the police investigation were still unknown, and the Joachins stated during the EUO that the prior owner of the Property had been arrested for the fire.[13] GeoVera sought declaratory judgment determining that the Policy did not cover the Property, particularly because the Joachins never resided at the property, and the Property therefore did qualify as "residence premises."[14]

### 2. The Joachins' Third-Party Claims

In the Third-Party Complaint, the Joachins assert that they enlisted the services of Bowles to assist them in procuring homeowner's insurance, and Bowles is responsible for any deficiencies in the Joachins' insurance application.[15] According to the Complaint, the Joachins provided Bowles with honest information regarding their plans for the Property and Bowles completed all necessary forms using this information.[16] The Joachins allege that Bowles promised them that if the Joachins signed the forms, they would have an insurance policy, and because of their limited communication skills, the Joachins fully relied on Bowles' representations.[17] The Joachins now assert that if the Joachins are found to have misrepresented facts in their application and are denied insurance coverage because of these misrepresentations, Bowles should be held liable.[18] Therefore, in the event that they are found liable, the Joachins seek indemnification from

---

[12] *Id.* at 3–5.

[13] *Id.* at 5.

[14] *Id.* at 15.

[15] *Id.* at 21.

[16] *Id.*

[17] *Id.*

[18] *Id.* at 22.

Bowles and additional damages for negligence, breach of contract, detrimental reliance, and failure to use reasonable diligence.[19]

**B.**     *Procedural Background*

On August 10, 2018, GeoVera filed a Complaint against the Joachins.[20]  On September 5, 2018, the Joachins filed an answer, counterclaims against GeoVera, and a Third-Party Complaint against Bowles.[21] On November 5, 2018, Bowles filed a motion to dismiss the Third-Party Complaint.[22] On April 29, 2019, the Court denied the motion.[23] The Court found that the Joachins had not stated a claim for negligence, breach of contract, detrimental reliance, or failure to exercise reasonable diligence.[24] However, rather than dismissing the claims at that time, the Court granted the Joachins leave to amend the Third-Party Complaint.[25] On May 13, 2019, the Joachins filed an Amended Third-Party Complaint.[26]

On June 28, 2019, the Court granted a motion to dismiss filed by GeoVera and dismissed the Joachins' counterclaim against GeoVera.[27] On July 18, 2019, the Court granted a motion for summary judgment filed by GeoVera, finding that GeoVera was entitled to judgment in its favor on the original complaint because there were no genuine issues of fact in dispute and the insurance

---

[19] *Id.*

[20] Rec. Doc. 1.

[21] Rec. Doc. 5.

[22] Rec. Doc. 14.

[23] Rec. Doc. 33.

[24] *Id.*

[25] *Id.*

[26] Rec. Doc. 35.

[27] Rec. Doc. 95.

policy did not provide coverage for the property.[28] Also on July 18, 2019, the Court granted in part and denied in part Bowles' second motion to dismiss the Joachins' third-party claims.[29] In the Court's order, the Court dismissed the Joachins' breach of contract and bad faith claims against Bowles.[30]

On June 18, 2019, Bowles filed the instant "Motion for Summary Judgment."[31] On June 25, 2019, the Joachins filed an opposition.[32] With leave of Court, on July 3, 2019, Bowles filed a reply in support of the motion.[33]

## II. Parties' Arguments

### A.    Bowles' Arguments in Support of the Motion for Summary Judgment

In the instant motion, Bowles seeks summary judgment on the Joachins' third-party claims for negligence, detrimental reliance, and failure to exercise reasonable diligence.[34] Bowles asserts that summary judgment is appropriate because the Joachins fail to meet their burden of proving that Bowles had a duty to procure a specific type of insurance policy or that Bowles represented to the Joachins that it would procure a specific type of insurance policy.[35]

First, Bowles contends that the Joachins cannot meet their burden of proof on the

---

[28] Rec. Doc. 127.

[29] Rec. Doc. 128.

[30] *Id.*

[31] Rec. Doc. 66.

[32] Rec. Doc. 87.

[33] Rec. Doc. 116.

[34] Rec. Doc. 66-7 at 5. The instant motion was filed on June 18, 2019, seeking dismissal of the Joachins' claims for negligence, breach of contract, detrimental reliance, and failure to exercise reasonable diligence. In the Court's July 19, 2019 order, the Court dismissed the Joachins' breach of contract claim. Therefore, the Court will not address Bowles' arguments in the instant motion relating to the breach of contract claim.

[35] *Id.* at 5.

negligence claim because the Joachins have not identified a duty that Bowles breached.[36] Bowles contends that it did not have a duty to recommend a builders risk policy or vacancy policy because "'Louisiana does not impose a duty on an agent to identify a client's coverage needs and assess what type and amount of coverage would sufficiently meet the client's needs.'"[37] Bowles insists that Louisiana law places the burden on the client to ensure that he procures the insurance he needs.[38]

Bowles also insists that the Joachins cannot claim that Bowles breached a duty to provide an interpreter for the Joachins during the application process.[39] Bowles avers that "no such duty exists in the law," but even if it did, the duty would not arise in this situation because the Joachins do not recall Niki Marchand, Bowles' agent, using any words they did not understand.[40] Bowles also contends that the Joachins have studied the English language for years, Ebert Joachin passed the English proficiency test, and the Joachins' daughter, who was present during the application process, speaks English fluently and could have acted as an interpreter.[41] Finally, Bowles insists that the Joachins cannot claim that Bowles breached a duty in misrepresenting facts on the Joachins' insurance application because Louisiana law places a duty on the insured to confirm that the application is correct, and the Joachins have previously testified that they believed all the information was correct.[42]

---

[36] *Id.* at 6.

[37] *Id.* (quoting *Isidore Newman Sch. v. J. Everett Eaves, Inc.*, 09-2161, p. 7 (La. 7/6/10))

[38] *Id.*

[39] *Id.* at 7.

[40] *Id.*

[41] *Id.*

[42] *Id.* at 7–9.

Next, Bowles avers that the Joachins cannot meet their burden of proof on the claim for detrimental reliance because they have not identified any representations that they detrimentally relied upon.[43] Bowles alleges that though the Joachins state in the amended third-party complaint that "Bowles told them 'that they had their best interest at heart,'" the Joachins later admitted in their depositions that Bowles never made this representation.[44] Further, Bowles asserts that "[t]o the extent the Joachins claim that Bowles represented that an insurance policy had been procured, it is undisputed that an insurance policy was procured."[45] For these reasons, Bowles contends that the Court should grant summary judgment on the Joachins' claim for detrimental reliance.[46]

Additionally, Bowles contends that the Court should grant summary judgment on the Joachins' claim for failure to exercise reasonable diligence because Louisiana law does not impose a duty on an insurance agent to procure a specific type of insurance.[47] Bowles argues that it is the duty of the insured to assess whether the policy actually meets their needs, and the agent cannot be held responsible if the insured does not adequately determine the coverage they need or read the policy terms.[48] Bowles asserts that the Joachins only requested a homeowners' insurance policy and this policy was procured.[49] Bowles contends that the Joachins have no evidence proving that Bowles represented that the insurance policy would cover the property for

---

[43] *Id.* at 11.

[44] *Id.* at 11–12.

[45] *Id.* at 12.

[46] *Id.*

[47] *Id.* at 12.

[48] *Id.*

[49] *Id.*

the Joachins' particular loss.[50] Thus, Bowles argues that the Court should grant the motion for summary judgment and dismiss this claim along with all of the Joachins' other claims.[51]

**B.    *The Joachins' Arguments in Opposition to the Motion for Summary Judgment***

In opposition, the Joachins argue that the Court should deny the motion for summary judgment because Bowles had a fiduciary duty to procure a full coverage policy for the Joachins.[52] The Joachins cite several state and federal court cases for the proposition that "[i]t is well-settled that an insurance agent's duty to the customer can be greater than merely the procuring of requested insurance, depending on what services the agent holds himself out as performing and on the specific relationship and agreements between the particular agent and client."[53] The Joachins aver that they informed Bowles that they did not reside at the property and needed full coverage for their circumstances.[54] The Joachins assert, however, that Bowles failed to quote or procure insurance that would provide coverage for the property while the Joachins were preparing to move in.[55]

In support of their arguments regarding Bowles' duty, the Joachins cite the deposition testimony of Niki Marchand ("Marchand"), Bowles' agent that sold the Joachins the policy.[56]

---

[50] *Id.* at 13.

[51] *Id.*

[52] Rec. Doc. 87 at 11–16.

[53] *Id.* at 11 (citing *Graves v. State Farm Mut. Auto. Ins. Co.,* 01-1243 (La. App. 3 Cir. 6/26/02), 821 So. 2d 769; *Karam v. St. Paul Fire & Marine Ins. Co.,* 281 So. 2d 728 (La. 1973); *Durham v. McFarland, Gay and Clay, Inc.,* 527 So.2d 403, 405 (La. App. 4 Cir. 1988); *Offshore Production Contractors, Inc. v. Republic Underwriters Insurance Co.,* 910 F.2d 224 (5th Cir. 1990); *Landry v. State Farm Fire & Casualty Co.,* 428 F.Supp.2d 531 (E.D. La 2006); *Boothe v. American Insurance Co.,* 327 So.2d 477 (La. App. 1 Cir. 1/2/76); *Fidelity Homestead Assoc. v. Hanover Insurance Co.,* 06-3511, 2006 U.S. Dist. LEXIS 75345 at 11).

[54] *Id.* at 12.

[55] *Id.* at 11–12.

[56] *Id.* at 15.

According to the Joachins, Marchand admitted during her deposition that when she submitted the Joachins' insurance application to GeoVera, she did not accurately report to GeoVera that the Joachins did not reside at the property on the date the policy was purchased.[57] The Joachins also allege that Marchand testified that she only provided the Joachins with an application for a homeowner policy and did not offer to sell the Joachins a builder's risk insurance policy or a policy that would cover a vacant property.[58]

Based on Marchand's statements and purported knowledge, the Joachins contest Bowles' assertion that Bowles did not have a duty to provide a policy that would cover the Joachins' specific losses.[59] The Joachins argue that the cases that Bowles cites in the motion are distinguishable from the facts here because unlike in those cases, Marchand was aware of the Joachins' need for insurance that would protect the property until the Joachins moved in, and Marchand failed to provide a policy that would cover the customer's needs.[60] Because of this disagreement between the Joachins and Bowles regarding Bowles' duty, the Joachins assert that genuine issues of material fact prevent the Court from granting summary judgment on the negligence claim.[61]

Regarding the claim for detrimental reliance, the Joachins assert that "it is beyond question that Bowles made a representation by conduct or word that they had provided valid

---

[57] *Id.* at 17–18.

[58] *Id.* at 18.

[59] *Id.* at 19–20.

[60] *Id.* at 20–21.

[61] *Id.* at 22.

insurance coverage to the Joachins."[62] The Joachins allege that Mariette Joachin's deposition transcript provides context for Bowles' representations and reveals that Bowles made a specific promise to the Joachins.[63] The Joachins argue that they relied on this assertion to their detriment and Bowles should be responsible for this reliance.[64] For these reasons, the Joachins contend that despite Bowles' arguments, the Joachins prove their claim for detrimental reliance.[65]

Finally, the Joachins contend that there are issues of material fact in dispute regarding whether Bowles was required to use reasonable diligence in procuring a policy that would cover the Joachins' loss.[66] The Joachins argue that Bowles was required to use reasonable diligence in finding a policy that would cover the Joachins while they were not actively residing at the property.[67] The Joachins also assert that Bowles' reliance on the Court's opinion in *NOLA Ventures, LLC v. Upshaw Insurance Agency, Inc.*,[68] is misplaced because the facts are distinguishable, particularly because the instant matter involves Bowles undertaking a duty to provide a policy that fully covered the property.[69] Accordingly, the Joachins insist that there are issues of material fact regarding their claim for failure to exercise reasonable diligence, and the Court should deny the motion for summary judgment.[70]

---

[62] *Id.* at 23.

[63] *Id.* at 24.

[64] *Id.*

[65] *Id.*

[66] *Id.* at 24.

[67] *Id.* at 24–25.

[68] No. 12-1026, 2004 WL 4675008 (E.D. La. 2014) (Brown, J.).

[69] *Id.*

[70] *Id.* at 25.

### C. Bowles' Arguments in Further Support of the Motion for Summary Judgment

In reply, Bowles first argues that "there is no evidence that the Joachins requested 'full coverage' or that Bowles assured the Joachins that 'full coverage' was procured; in fact, neither statement was made."[71] Nevertheless, Bowles asserts that such statements would be legally insufficient to establish a duty for Bowles to procure a specific type of policy for the Joachins.[72] Bowles refers back to the Louisiana Supreme Court case *Isidore Newman School v. J Everett Eaves, Inc.*,[73] and highlights language saying that insurance agents have no duty to recommend coverage amounts or determine whether the client is underinsured.[74] Bowles insists that the duty is on the client to request the appropriate insurance, and the client is required to read the terms of the policy to ensure that the coverage meets the client's needs.[75] Finally, Bowles argues that the cases cited by the Joachins "contain incorrect, outdated law" that has not been followed by courts in this district since the Louisiana Supreme Court's decision in *Isidore Newman*.[76]

Regarding the detrimental reliance claim, Bowles contends that the Joachins fail to prove the specific language of the representations that Bowles made to the Joachins regarding the type of policy Bowles would procure.[77] Bowles asserts that there is no evidence that Bowles undertook a duty to procure a policy that would cover all risks, but even if Bowles' agent made such a statement, it would not be sufficient to support a detrimental reliance claim because the Joachins

---

[71] Rec. Doc. 116 at 1–2.

[72] *Id.* at 2.

[73] 09-2161 (La. 7/6/10), 42 So.3d 352.

[74] *Id.*

[75] *Id.* at 2–3.

[76] *Id.* at 2.

[77] *Id.* at 4.

were responsible for reading the policy and knowing its contents.[78]

Finally, Bowles argues that the Joachins do not prove failure to exercise reasonable diligence because there was no special relationship between Bowles and the Joachins to establish a heightened duty to procure a particular type of policy.[79] Accordingly, Bowles argues that the Joachins fail to prove any of their asserted claims and the Court should grant the motion for summary judgment.[80]

### III. Legal Standard

#### A.    *Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[81] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[82] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[83] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment

---

[78] *Id.*

[79] *Id.* at 5.

[80] *Id.*

[81] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[82] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[83] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

as a matter of law.[84] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[85]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[86] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[87] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[88] In doing so, the nonmoving party may not rest upon mere allegations or denials in its pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[89]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied

---

[84] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[85] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[86] *Celotex*, 477 U.S. at 323.

[87] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (citing *Little v. Liquid Air Corp.*, 939 F.2d 1293, 1299 (5th Cir. 1991)).

[88] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[89] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992); *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[90] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[91]

## B.   *Negligence*

Louisiana courts conduct a "duty-risk analysis" to determine whether a defendant is liable for negligence.[92] To prevail on a negligence claim, a plaintiff must prove five elements: (1) the defendant had a duty to conform his conduct to a specific standard of care; (2) the defendant's conduct failed to conform to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) the defendant's conduct caused actual damages.[93]

## C.   *Failure to Exercise Reasonable Diligence*

Under Louisiana law, "[a]n insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested

---

[90]  *Little*, 37 F.3d at 1075.

[91] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc*., 819 F.2d 547, 549 (5th Cir. 1987).

[92] La. Civ. Code art. 2315; *Lemann v. Essen Lane Daiquiris, Inc*., 2005-1095 (La. 3/10/06), 923 So. 2d 627, 632–33 (citing *Mathieu v. Imperial Toy Corporation*, 94-0952 (La.11/30/94), 646 So.2d 318, 321); *see also Nagle v. Gusman*, 61 F. Supp. 3d 609, 620 (E.D. La. 2014) (Vance, J.).

[93] *Lemann*, 923 So. 2d at 633.

insurance."[94] In order to recover for a loss arising out of the failure of an insurance agent to obtain insurance coverage, a plaintiff must prove:

> (1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) actions by the agent warranting the client's assumption that the client was properly insured.[95]

### D. Detrimental Reliance

Under Louisiana law, "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying."[96] To establish a claim of detrimental reliance a plaintiff must demonstrate: "(1) a representation by conduct or word; (2) made in such a manner that the promisor should have expected the promisee to rely upon it; (3) justifiable reliance by the promisee; and (4) a change in position to the promisee's detriment because of the reliance."[97]

## IV. Analysis

In the instant motion, Bowles urges the Court to grant summary judgment on all of the Joachins' claims because the Joachins fail to prove that Bowles had a duty to procure a specific type of insurance policy or represented such.[98] In opposition, the Joachins assert that the record reflects genuine issues of material fact regarding the duty that Bowles undertook in procuring

---

[94] *Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So. 2d 728, 730 (La. 1973).

[95] *Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 229 (5th Cir. 1990) (internal citations omitted).

[96] La. Civ. Code Ann. art. 1967.

[97] *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 334 (5th Cir. 2007) (quoting *Suire v. Lafayette City-Par. Consol. Gov't*, 907 So. 2d 37, 59 (La. 2005)).

[98] Rec. Doc. 66-7 at 6–9.

insurance for the Joachins.[99] The Joachins also assert that they provide sufficient evidence to support their negligence, detrimental reliance, and failure to exercise reasonable diligence claims.[100] The Court will address each argument in turn.

## A.    *Negligence and Failure to Exercise Reasonable Diligence*

The Joachins' claims for negligence and failure to exercise reasonable diligence both rely on the assertion that Bowles had a duty to procure for the Joachins a valid policy that provided full coverage for the property while the Joachins were not residing there.[101] In opposition, Bowles argues that "'Louisiana does not impose a duty on an agent to identify a client's coverage needs and assess what type and amount of coverage would sufficiently meet the client's needs.'"[102] Bowles contends that it only had a duty to procure an insurance policy, not a particular type of policy.[103] Because the Joachins' negligence and failure to exercise reasonable diligence claims are both contingent on whether Bowles had a duty to recommend and procure a specific type of insurance policy, the Court will begin by analyzing Bowles' duty under Louisiana law.

While Louisiana law does not recognize a duty owed by an insurance agent to spontaneously advise or procure any specific type or amount of insurance coverage for a client,[104] there are some instances where an insurance agent can be held liable for failing to advise the client of recommended coverage.[105] In *Offshore Prod. Contractors, Inc. v. Republic Underwriters*

---

[99] Rec. Doc. 87 at 16.

[100] *Id.* at 25.

[101] Rec. Doc. 87 at 21, 24–25.

[102] Rec. Doc. 66-7 at 6.

[103] *Id.*

[104] *Isidore Newman School v. J. Everett Eaves Inc.*, 2009–2161 (La. 7/6/10); 42 So. 3d 352.

[105] *Offshore Prod. Contractors, Inc.*, 910 F.2d at 229–30.

*Ins. Co.*, the Fifth Circuit held that:

> Under this scenario, an insurance agent is more than a "mere order taker" for the insured. His fiduciary duties include advising the client with regard to recommended coverage, investigating and ascertaining the financial condition of prospective companies, and notifying the insured of policy cancellations or terminations. Where an agent is familiar with the insured's business, has reason to know the risks against which an insured wants protection, and has experience with the types of coverage available in a particular market, we must construe an undertaking to procure insurance as an agreement by the agent to provide coverage for the client's specific concerns.[106]

The Fifth Circuit also stated that "[w]here an insurance broker has experience in a particular field, that broker should possess reasonable knowledge of the general types of policies available, understand their different terms, and explore the specific coverage available in the area in which [the client] seeks to be protected. Proper diligence requires the insurance broker to 'canvass the market' and to be informed about different companies and variations in the available terms.'"[107]

Subsequent to the Fifth Circuit's holding in *Offshore Production*, the Louisiana Supreme Court decided *Isidore Newman Sch. v. J. Everett Eaves, Inc.*[108] In *Isidore Newman*, the plaintiff school sued its insurance agent because its insurance policy did not cover significant tuition losses it had incurred as a result of Hurricane Katrina.[109] The Louisiana Supreme Court examined a line of state and federal cases in which courts had denied that an insurance agent had a duty to independently assess the needs of the client and advise the client regarding a specific type of coverage.[110] The Louisiana Supreme Court ultimately held that the insurance agent at issue had

---

[106] *Id.* at 230 (internal citations omitted).

[107] *Id.* at 231.

[108] 2009-2161 (La. 7/6/10), 42 So. 3d 352.

[109] *Id.* at 353–56.

[110] *Id.* at 357–58.

no liability to the school because "it is well settled that the necessary coverages are best determined and calculated by the insured, who is charged with the primary responsibility to read the policy," and there was no evidence to suggest that the agent "had any way of knowing [about] the school's potential loss of business income."[111]

While some courts have questioned whether the *Isidore Newman* holding overrules the Fifth Circuit's holding in *Offshore Production*, other courts, including this Court, have found that the Louisiana Supreme Court's holding merely limits *Offshore Production* to specific factual situations.[112] These courts have determined that *Offshore Production* may still apply when an agent has reason to know that the client had a specific risk or requested coverage for specific circumstances.[113] Even the Louisiana Supreme Court in *Isidore Newman* acknowledged that "[t]he courts have noted that 'the advice that an agent had an affirmative duty to give the insured' involved 'aspects of the policies ... that were not within the knowledge generally held by a lay person,' i.e., 'the agent's specific knowledge of the insured's individual situation triggered that duty to disclose.'"[114] The Louisiana Supreme Court then noted that part of its finding that the agent had not failed to exercise diligence was that the insured had the most knowledge of its situation, and "[t]he facts alleged d[id] not suggest that [the agent] had any way of knowing the school's potential loss of business income."[115] Several district courts have utilized this rationale

---

[111] *Id.* at 358.

[112] *See Nola Ventures, LLC v. Upshaw Ins. Agency, Inc.,* No. 12-1026, 2014 WL 12721449, at *1 (E.D. La. 2014)*; Hernandez v. State Farm Gen. Ins. Co.,* No. 13-5783, 2014 WL 1457813, at *3 (E.D. La. 2014); *Lightfoot v. Hartford Fire Ins. Co*., No. 07-4833, 2010 WL 11545223, at *4 (E.D. La. 2010).

[113] *Nola Ventures,* 2014 WL 12721449, at *1*; Hernandez,* 2014 WL 1457813, at *3; *Lightfoot,* 2010 WL 11545223, at *4.

[114] *Isidore Newman School*, 42 So. 3d at 358 (quoting *Parker v. Lexington,* No. 06–4156, 2006 WL 3328041 (E.D. La. 2006)).

[115] *Id.*

18

by the Louisiana Supreme Court to find that based on what the insured specifically told the insurance agent and the agent's knowledge of the insurance field, an agent can fail to use reasonable diligence if he does not account for information he was given or advise the client on aspects of a policy that may affect the insurance requested.[116]

Here, the Joachins allege that when they enlisted Bowles to help them procure an insurance policy, they informed Marchand that they had not yet moved into the property.[117] In support of this assertion, the Joachins point to Marchand's deposition testimony, wherein Marchand states the following:

> Q: But they weren't yet living in the property that's marked as Exhibit 1?
> A: They were moving into one.
> Q: They would move into it, but they weren't at the time?
> A: That they purchased my insurance?
> Q: Yes.
> A. No.
> Q: No. Okay. No, they were not living there at the time—
> A: They were not living there at the time. They were moving in…[118]
>
> Q: Okay. So at the time you wrote and bound this policy for GeoVera, you knew that they were not living in Bienvenue but they were living in Parc Green?
> A. Correct…[119]
>
> Q. So you said you wrote a homeowner's policy thinking that she lived there?
> A. Yes.

---

[116] *Monceaux v. Monumental Life Ins. Co*., No. 10-147, 2011 WL 400342 (W.D. La. 2011) (finding issue of fact on whether client requested specific type of coverage and agent failed to share knowledge with client); *NOLA Ventures, LLC v. Upshaw Ins. Agency, Inc*., No. 12-1026, 2014 WL 4675008 (E.D. La. 2014) (finding genuine issue of fact where plaintiffs do not detail what they specifically asked the agent to procure); *Numa C. Hero & Son, LLP v. Brit UW Ltd*., No. 18-6470, 2018 WL 4184562 (E.D. La. 2018) (determining agent may have breached duty if client described risks but agent failed to procure insurance that covered these risks); *Bryan Properties of Shreveport, LLC v. Keith D. Peterson & Co*., No. 09--00984, 2011 WL 13243817 (W.D. La. 2011) (finding genuine issue of fact on what type of insurance the insured specifically requested from the agent); *Patt v. Selective Ins. Co. of Se.,* No. 12--02871, 2013 WL 12185237 (W.D. La. 2013) (finding cause of action where client may have requested specific insurance and agent represented that the requested coverage was obtained).

[117] Rec. Doc. 87 at 7–8.

[118] Rec. Doc. 87-2 at 76–77.

[119] *Id.* at 78.

Q. But you did know that she was living at a different property at the time you wrote the policy; right?
A. Say that again.
Q. Yeah. You did know at the time you wrote the policy she was living somewhere else?
A. With the intention of moving to Bienvenue?
Q. Yeah.
A. Yes, sir.
Q. But you didn't know exactly what day she was moving?
A. No.[120]

Mariette Joachin also stated in her deposition the following:

Q: And do you recall any of the other questions that she asked you?
A: She asked me when was my intention to move into the house.
Q: And what did you tell her?
A: I didn't give her a date, because I told her I didn't know.[121]

Based on these statements, it appears that the Joachins told Marchand that they did not currently reside at the property, and Marchand understood that the Joachins did not currently live at the property and were planning to move in at a later date. Bowles, however, cites *Isidore Newman* for the proposition that despite Marchand's knowledge that the Joachins did not reside at the property, Louisiana law placed the responsibility on the Joachins to ensure that the policy met their specific needs.[122] In support of this argument, Bowles highlights the deposition testimony of Mariette Joachin, wherein she testifies to the following:

Q: Okay. That's not what I asked you. My question was this. Did Niki [Marchand] answer every question that you asked her?
A: I didn't ask her for any specific questions.
Q: Did Niki or anyone else at Bowles & Associates make any promises to you?
A: They're not going to promise me anything. They're not my friend. I just went there to get an insurance policy and it was my first time there.
Q: Okay. So they did not promise you anything?
A: No.
Q: And they did not promise your husband anything, correct?

---

[120] *Id.* at 94.

[121] Rec. Doc. 87-4 at 24–25.

[122] Rec. Doc. 66-7 at 6–7.

A: No…[123]
Q: Did anyone at Bowles & Associates ever tell you or your husband that they had your best interests at heart?
A: No, but, you know, when you always -- when you purchase something, yeah, when you go to those offices, they welcome you and then they say, "Thank you for your business," at the end.[124]

Based on this testimony, Bowles contends that Marchand never represented to the Joachins that their particular loss would be covered and the Joachins were responsible for ensuring that any specific concerns were addressed.[125] As discussed above, *Isidore Newman* does place a burden on the insured to know their needs and ensure that the policy fits these needs,[126] but *Isidore Newman* also acknowledges that "'the advice that an agent had an affirmative duty to give the insured' involved 'aspects of the policies ... that were not within the knowledge generally held by a lay person,' i.e., 'the agent's specific knowledge of the insured's individual situation triggered that duty to disclose.'"[127]

In this matter, Marchand knew that the Joachins wanted to purchase insurance that would provide coverage for their property.[128] Marchand also had knowledge that the Joachins did not reside at the property at the time they purchased the policy.[129] Therefore, if Marchand knew that the policy would not provide coverage because the Joachins did not reside at the property,

---

[123] Rec. Doc. 87-4 at 39.

[124] *Id.* at 41.

[125] Rec. Doc. 66-7 at 13.

[126] *Isidore Newman School*, 42 So. 3d at 358 ("[I]t is well settled that the necessary coverages are best determined and calculated by the insured, who is charged with the primary responsibility to read the policy," and there was no evidence to suggest that the agent "had any way of knowing [about] the school's potential loss of business income.").

[127] *Id.* (quoting *Parker v. Lexington,* No. 06–4156, 2006 WL 3328041 (E.D. La. 2006)).

[128] Rec. Doc. 87-2 at 86–87.

[129] *Id.* at 76–77.

Marchand may have had a duty to advise the Joachins of this, especially if this information was something that an average person may not be aware of. Marchand's testimony, however, is equivocal on whether Marchand knew that the Joachins' lack of residency was an issue. During her deposition, Marchand stated the following:

> Q. Did you ever offer to sell the Joachins a vacancy-only policy or a policy -- let me rephrase, because that was inartful -- a policy for a property that was vacant?
> A. No, sir. I felt no need to.
> Q. You didn't feel the need to because you knew that at some point they would be moving in?
> A. I knew that they were moving in, yes.
> Q. Did you offer to sell them a builder's risk policy?
> A. No, sir.
> Q. And you didn't feel the need to because you knew they would be moving in?
> A. Correct.[130]

These statements indicate that Marchand did not offer the Joachins alternate insurance because she knew they would be moving into the property. However, later in the deposition, Marchand testifies to the following:

> Q. So you said you wrote a homeowner's policy thinking that she lived there?
> A. Yes.
> Q. But you did know that she was living at a different property at the time you wrote the policy; right?
> A. Say that again.
> Q. Yeah. You did know at the time you wrote the policy she was living somewhere else?
> A. With the intention of moving to Bienvenue?
> Q. Yeah.
> A. Yes, sir.
> Q. But you didn't know exactly what day she was moving?
> A. No.
> Q. Do you think based on that, not asking -- not, like, hindsight is 20/20, but looking at Exhibit 1 and 4, do you think there was a different type of policy you should have written for Bienvenue?
> A. No, sir.
> Q. So you believe that was the right policy; right?
> A. Correct.
> Q. Because she was buying the house and moving into it?

---

[130] *Id.* at 85.

A. Correct. I mean, I just brought a house in 2018 and I moved into it.[131]

Marchand also shares the following:

Q. Okay which false information was given?
A. Well, they're saying that they lived in the home -- I mean, they're saying that they didn't live in the home when they told me that they did or they were moving into the home as their primary residence.
Q. Well, are you saying they weren't going to move into the home as their primary residence?
A. No. I'm saying that they were supposed to move into the home as their primary residence.
Q. And do you have any reason to think that they weren't going to move into the home as their primary residence?
A. Not until it came about that they -- the fire came about and they said they weren't living there. Other than that, I just assumed that they were living there.
Q. You assumed that they were living there on April 11th?
A. No.
Q. We're clear, you knew they weren't living there on April 11th?
A. On April 11th, correct.[132]

The Joachins argue that this testimony reveals that Marchand should have offered a different policy based on her knowledge that they did not reside at the property and did not have a move-in date.[133]

The Court finds that Marchand's deposition provides contradictory support for the Joachins' argument. Marchand first asserted that she did not offer the Joachins a different policy because she thought they were moving into the property.[134] Marchand then stated that she knew the Joachins lived elsewhere and did not have a date for moving in.[135] After this, Marchand indicated that she didn't have a reason to think the Joachins would not move into the residence

---

[131] *Id.* at 94.

[132] *Id.* at 105–06.

[133] Rec. Doc. 87 at 18–19.

[134] Rec. Doc. 87-2 at 85.

[135] *Id.* at 94.

and "just assumed they were living there."[136] Thus, it is unclear when Marchand believed the Joachins would move into the property and whether Marchand knew that lack of residency at the property, or lack of a move in date, could have been an issue for the Joachins that Marchand should have alerted them to.

Further, the Joachins assert that Marchand breached her duty to exercise reasonable diligence by not asking all pertinent questions when compiling the GeoVera's information, not properly completing the GeoVera application, and not indicating on the GeoVera application that the Joachins did not reside at the property.[137] In Marchand's deposition, she testified that during the application process, she used a quote sheet to gather information from the Joachins,[138] she did not ask all the questions on the quote sheet,[139] and she compiled the Joachins application based on these questions but the Joachins did not complete the application with her.[140] Marchand also stated that she never told GeoVera in the application that the Joachins did not live at the property.[141]

Therefore, considering the deposition testimony, it appears that there is conflicting evidence regarding whether Marchand knew that the Joachins' lack of residency would affect their coverage under the policy. According to the Louisiana Supreme Court, if Marchand had specific knowledge that the GeoVera policy would not cover the Joachins' situation, Marchand's

---

[136] Rec. Doc. 87-2 at 106.

[137] Rec. Doc. 87 at 22.

[138] Rec. Doc. 87-2 at 68.

[139] *Id.* at 69–70.

[140] *Id.* at 82.

[141] Rec. Doc. 87-2 at 147.

knowledge may have triggered a duty for Marchand to disclose to the Joachins the effects of not residing at the property.[142] Thus, a factfinder must analyze the parties' testimony and decide whether Marchand had "specific knowledge of the [Joachins'] individual situation [that] triggered th[is] duty to disclose."[143] Then, depending upon the factfinder's determination, a factfinder must also decide the dispute of fact regarding whether Marchand breached a duty in completing the application and failing to inform GeoVera that the Joachins did not reside at the property.

Accordingly, based on the totality of evidence presented, and taking the evidence in the light most favorable to the Joachins, the Court finds that there are genuine issues of material fact as to whether Bowles triggered a duty to disclose and breached a duty to use reasonable diligence to procure a policy for the Joachins. Therefore, the Court denies summary judgment on the negligence and failure to exercise reasonable diligence claims.

### B.    *Detrimental Reliance*

To establish a claim of detrimental reliance a plaintiff must demonstrate: "(1) a representation by conduct or word; (2) made in such a manner that the promisor should have expected the promisee to rely upon it; (3) justifiable reliance by the promisee; and (4) a change in position to the promisee's detriment because of the reliance."[144] Bowles asserts that summary judgment is appropriate because the Joachins do not identify any representations or express

---

[142] *Isidore Newman Sch.,* 42 So.3d at 358 ("The courts have noted that 'the advice that an agent had an affirmative duty to give the insured' involved 'aspects of the policies ... that were not within the knowledge generally held by a lay person,' i.e., 'the agent's specific knowledge of the insured's individual situation triggered that duty to disclose.'") (quoting *Parker v. Lexington,* 06–4156, 2006 WL 3328041 (E.D.La. 2006).

[143] *Id.*

[144] *In re Ark-La-Tex Timber Co., Inc.,* 482 F.3d 319, 334 (5th Cir. 2007) (quoting *Suire v. Lafayette City-Par. Consol. Gov't,* 907 So. 2d 37, 59 (La. 2005)).

promises that Bowles made to the Joachins.[145] Bowles highlights language from Mariette Joachins' deposition wherein she testifies to the following:

> Q: Okay. That's not what I asked you. My question was this. Did Niki [Marchand] answer every question that you asked her?
> A: I didn't ask her for any specific questions.
> Q: Did Niki or anyone else at Bowles & Associates make any promises to you?
> A: They're not going to promise me anything. They're not my friend. I just went there to get an insurance policy and it was my first time there.
> Q: Okay. So they did not promise you anything?
> A: No.
> Q: And they did not promise your husband anything, correct?
> A: No…[146]
> Q: Did anyone at Bowles & Associates ever tell you or your husband that they had your best interests at heart?
> A: No, but, you know, when you always -- when you purchase something, yeah, when you go to those offices, they welcome you and then they say, "Thank you for your business," at the end.[147]

According to Bowles, this testimony reveals that none of its agents ever told the Joachins that their policy would cover any specific risks and did not promise that the Joachins would have coverage for all situations.[148] Therefore, Bowles asserts that the Joachins do not have a claim for detrimental reliance under Louisiana law.

In opposition, the Joachins assert that "it is beyond question that Bowles made a representation by conduct or word that they had provided valid insurance coverage to the Joachins."[149] The Joachins attach their affidavits wherein they first clarify their deposition

---

[145] Rec. Doc. 66-7 at 11.

[146] Rec. Doc. 87-4 at 39.

[147] *Id.* at 41.

[148] Rec. Doc. 116 at 4.

[149] Rec. Doc. 87 at 23.

responses stating that Bowles did not make them any promises.[150] The Joachins contend that during their depositions, they misinterpreted the attorney's use of the word "promise" as a type of gift, and they responded "no" because they did not believe that Bowles meant to gift them anything.[151] The Joachins allege, however, that they did believe that Bowles agreed to provide them with certain things.[152] The Joachins state that: "Bowles and Associates, Inc. did not offer me any gifts, but, did offer me insurance if I paid for it which I then paid." "They told me they would get me insurance to cover my house if anything happened to it, and then I paid them for that insurance." "Niki Marchand explained that the only thing we were not covered for on the new home was flood damage."[153]

In *In re Ark-La-Tex Timber Co., Inc.*,[154] the Fifth Circuit noted that "[t]he doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence."[155] "Typically, successful detrimental reliance claims are based upon promises made to the claimant by the other party."[156] "[T]he basis of detrimental reliance is 'the idea that a person should not harm another person by making promises that he will not keep.' Thus, the focus of analysis of a detrimental reliance claim

---

[150] Rec. Doc. 87-5; Rec. Doc. 87-6.

[151] Rec. Doc. 87-5 at ¶ 11; Rec. Doc. 87-6 at ¶ 12. The Fifth Circuit has held that courts may disregard affidavits in opposition to motions for summary judgment if the affidavit contradict deposition testimony without providing an explanation for the contradiction. *S.W.S. Erectors, Inc. v. Infax, Inc*., 72 F.3d 489, 495 (5th Cir. 1996). Here, the Joachins provide an explanation for the discrepancy between their deposition testimony and their affidavit statements. A factfinder is responsible for determining the credibility of the Joachins' statements in light of this explanation.

[152] Rec. Doc. 87-5 at ¶ 11; Rec. Doc. 87-6 at ¶ 12.

[153] *Id.*

[154] 482 F.3d 319 (5th Cir. 2007).

[155] *Id.* (citing *Suire v. Lafayette City-Par. Consol. Gov't*, 907 So. 2d 37 (La. 2005)).

[156] *Suire*, 907 So.2d at 31.

is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment.'"[157]

Here, the Joachins allege in their affidavit that Marchand represented to them that they purchased an insurance policy that would provide coverage for perils, with the exception of flood damage. The Joachins assert that they relied on this representation to their detriment because when Marchand led them to believe that they had coverage, they ceased looking for alternate insurance and relied solely on the GeoVera policy.

The Court finds that the Joachins' affidavits create genuine issues of material fact that preclude summary judgment on the detrimental reliance claim. As discussed above, Marchand was aware that the Joachins did not reside at the property on the date they purchased the policy. If Marchand knew that the GeoVera policy may not have covered the property because of the lack of residency, then Marchand may have made promises to the Joachins that could not have been kept. Further, Marchand could have expected the Joachins to rely on her representations and proceed as if they had a valid policy. Therefore, a trier of fact must decide whether to believe the Joachins' testimony that Marchand made these representations to the Joachins, and if so, whether Marchand knew that the Joachins would detrimentally rely on her statements. Accordingly, genuine issues of material fact preclude summary judgment and the Court will deny summary judgment on the detrimental reliance claim.

## V. Conclusion

For the foregoing reasons, genuine issues of material fact remain on whether Bowles undertook a duty to procure a policy for the Joachins that would provide coverage for the property

---

[157] *Id.* at 31–32 (internal citations omitted).

while the Joachins did not reside there. There are also genuine issues of fact on whether Bowles'

agent represented to the Joachins that their property would be covered when she knew that the

Joachins did not reside there. Therefore, the Court will deny summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Third-Party Defendant Bowles & Associates, Inc.'s

"Motion for Summary Judgment"[158] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this __6th__ day of August, 2019.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[158] Rec. Doc. 66.